IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | | |
|---|---|---|
| CRYSTAL DYE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 3:14-cv-01176-JO |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner of | ) | OPINION AND ORDER |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

JONES, J.,

Plaintiff Crystal Dye appeals the Commissioner's decision to deny her claim for disability insurance benefits under Title II of the Social Security Act and her claim for supplemental security income under Title XVI of the Act. The Court has jurisdiction under 42 U.S.C. § 405(g). I AFFIRM the Commissioner's decision.

**PRIOR PROCEEDINGS**

When Dye filed her concurrent Title II and Title XVI applications, she alleged disability beginning January 1, 2009. She later amended the alleged onset of disability to January 1, 2010. Her insured status under the Act expired on September 30, 2010. Dye must establish that she became disabled on or before that date to prevail on her Title II claim. 42 U.S.C. § 423(a)(1)(A);

1 - OPINION AND ORDER

*Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998). Dye alleged disability from depression, anxiety, and fibromyalgia.

The Administrative Law Judge ("ALJ") applied the sequential disability determination process described in 20 C.F.R. § 404.1520 and § 416.920. The ALJ found that Dye's ability to work was limited by fibromyalgia, obesity, dysthymia, agoraphobia with panic disorder, and undifferentiated somatoform disorder. The ALJ determined that, despite these impairments, Dye retained the residual functional capacity ("RFC") to perform a range of medium, unskilled work, involving simple tasks with low stress that did not require significant contact with others. The ALJ's RFC determination is described more fully below. The vocational expert testified that a person with Dye's RFC could perform the work activities required in such occupations as hand packager, auto detailer, and laundry worker, which represent hundreds of thousands of jobs in the national economy. Admin. R. 23-24. Accordingly, the ALJ found Dye was not disabled within the meaning of the Social Security Act at any time up to the date of his decision. Admin. R. 24.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Substantial evidence is such relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) ("Substantial evidences means more than a scintilla, but less than a preponderance.") quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Under this standard, the Commissioner's factual findings must be upheld if supported by inferences reasonably drawn from the record even if

evidence exists to support another rational interpretation. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

## DISCUSSION

### I. Claims of Error

Dye contends the ALJ erred by omitting anxiety from the severe impairments he identified at step two. Dye contends the ALJ failed to assess her RFC accurately because he discounted the credibility of her subjective statements, gave insufficient weight to the opinions of her physicians, and discounted her mother's lay witness statements. Dye argues the ALJ's failure to accurately assess her limitations led him to erroneously conclude that she remained capable of engaging in work within the limitations in the RFC assessment.

### II. Step Two

At step two, the ALJ's task is simply to determine whether any combination of impairments has more than a *de minimis* impact on the claimant's ability to do basic work activities. Here, the ALJ resolved that question in Dye's favor and properly continued to the remaining steps of the sequential decision-making process. Accordingly, step two entailed no harmful error for Dye. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (any error in omitting an impairment from the list of severe impairments at step two was harmless because step two was resolved in claimant's favor); *Lewis v. Astrue*, 498 F.3d 909 (9th Cir. 2007) (failure to list impairment as severe at step two was harmless because the limitations posed by the impairment were considered at step four).

### III. RFC Assessment

The ALJ determined that Dye retained the RFC to perform a modified range of medium work during the period that is relevant to her claim. He found her limited to simple, routine, repetitive

3 - OPINION AND ORDER

tasks with one to two-step instructions. She could perform work that does not require contact with the public, and that requires only occasional superficial contact with coworkers regarding trivial matters. The ALJ found Dye limited to low-stress work, requiring few decisions and few changes. In addition, Dye required a break every two hours. Admin. R. 17. Dye contends this RFC assessment did not accurately describe all of her limitations.

## A. Credibility Determination

In her application, Dye alleged that the combined effects of fibromyalgia, depression, and anxiety disorder prevented her from working. At the administrative hearing, Dye testified that her anxiety caused rapid heartbeat and shallow breathing, feelings of confusion, inability to concentrate, and inability to communicate. She testified that her depression caused periods of extreme disinterest and lack of motivation to even get out of bed. She said her fibromyalgia caused a loss of concentration, confusion, extreme joint and muscular pain, and digestive system issues. Admin. R. 51-52, 54-56, 59.

The ALJ determined that the medical evidence supported impairments that could reasonably be expected to cause some degree of the symptoms Dye alleged, but he did not believe that her symptoms were as intense, persistent, and limiting as she claimed. Admin. R. 33-34. He found that the objective medical evidence did not support all the limitations Dye identified and otherwise failed to provide strong support for the extent of symptoms and limitations she claimed. Thus, the ALJ did not credit Dye's claim that she could not work, instead finding that she could perform basic work activities with the appropriate limitations outlined in the RFC assessment. Admin. R. 34, 39. Dye contends the ALJ erred by finding her not wholly credible.

An adverse credibility determination must include specific findings supported by substantial evidence and the ALJ must provide a clear and convincing explanation. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Smolen*, 80 F.3d at 1281-82. The findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Tommasetti*, 533 F.3d at 1039 quoting *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). The reviewing court may not second guess an ALJ's credibility determination, however, if it is supported by substantial evidence. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

An ALJ should consider all the evidence in the case record when assessing a claimant's credibility, including objective medical evidence, medical opinions, treatment history, daily activities, work history, third-party observations of the claimant's functional limitations, and any other evidence that bears on the consistency and veracity of the claimant's statements. *Tommasetti*, 533 F.3d at 1039; *Smolen*, 80 F.3d at 1284.

Here, the ALJ considered proper factors for assessing Dye's credibility. He found that the medical record showed conservative treatment improved Dye's mental condition. When a claimant receives only conservative or minimal treatment, it supports an adverse inference as to the claimant's credibility regarding the severity of her subjective symptoms. *Parra v. Astrue*, 481 F3d 742, 750-51 (9th Cir. 2007); *Meanal v. Apfel*, 172 F3d 1111, 1114 (9th Cir. 1999).

The ALJ's finding is supported by substantial evidence in the case record. In October 2009, Dye's primary care provider Kathleen Harris-Hobbs, N.P., noted that Dye's condition was "controlled with Paxil" and her mental status examination was normal. Admin. R. 411, 413. In December 2009, Harris-Hobbs said that Dye was "negative for anxiety, depression, and sleep

5 - OPINION AND ORDER

disturbances." Admin. R. 408. In July 2010, Dye told Harris-Hobbs that "she really believes the Paxil has been very helpful in controlling her depression," although she continued to report anxiety.

Dye then told Harris-Hobbs that she "would like to look at SSI disability." Harris-Hobbs, however, noted generally benign clinical findings indicating Dye had normal mood and affect, was alert and oriented, and her recent memory was intact. Harris-Hobbs suggested that her treatment records were insufficient to support a disability claim, saying that she would need "additional information and evaluation before SSI could be considered." Admin. R. 431. This was the extent of Dye's mental health treatment record when her insured status under the Social Security Act expired in September 2010.

In November 2010, Harris-Hobbs found Dye's mental status examination normal. Admin. R. 426. In April 2011, Dye had no complaint about mental health problems and her mental status examination was normal. Admin. R. 423. After an adjustment to her medication regimen in June 2011, Dye reported to James Farley, M.D., that she felt "on even keel" and her anxiety was better. Admin. R. 18-19, 595, 597. Dye told Dr. Preston that she had been on an "even keel" since beginning Prozac. Admin. R. 464. Dye told Dr. Farley that her mood was stable and better. Admin. R. 593.

In September 2011, Dye reported that her anxiety had increased due to situational stressors and Dr. Farley adjusted her medications again. Admin. R. 19, 591. In February 2012, she told Dr. Farley her anxiety was "fairly good" but said she continued to experience episodic panic attacks. Admin. R. 19, 585. The next month, she said her medications were working so well that she did not want to change them. Admin. R. 504. In April 2012, Dye said she had experienced a panic attack but was able to calm herself. Admin. R. 19, 549. Dye told another physician that her medications

helped her anxiety symptoms. Admin. R. 19, 479-80. During her psychological evaluation by Shawn Johnston, Ph.D., she said the addition of a new medication was "even more helpful." Admin. R. 628. Thereafter, there were few changes in Dye's prescriptions reflected in the remaining medical records. Admin. R. 19, 565, 569, 573, 575, 577, 580, 583.

This conservative treatment history reflects that Dye's depression and anxiety symptoms responded well to her medication regimen. Impairments that are adequately controlled with medication are not disabling. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). The treatment record reflects conservative treatment, benign clinical findings, and consistent reports of improvement in symptoms, particularly with respect to anxiety symptoms. The ALJ could rationally draw an adverse inference as to the credibility of Dye's claim that her symptoms remained debilitating despite treatment.

The ALJ also examined reports of symptom magnification. An ALJ may discount a claimant's alleged limitations if the claimant seems to be magnifying or exaggerating symptoms. *Valentine v. Comm'r of Soc. Sec.*, 574 F.3d 685, 693 (9th Cir. 2009). In her psychological examination report, Dr. Johnston said that Dye claimed more extreme symptoms on subjective measures than her clinical interview suggested, which could reflect "some symptom magnification." Admin. R. 19, 630. In addition, Dr. Johnston observed that Dye did not exhibit pain behavior during the evaluation, despite complaining of disabling low back pain. Admin. R. 630. In addition, as noted previously, the ALJ identified several instances in which Dye claimed lower mood and increased anxiety, but her clinical findings remained unremarkable. Admin. R. 18-19. Conflicts between a claimant's subjective complaints and the objective medical evidence can undermine the claimant's credibility. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

7 - OPINION AND ORDER

The ALJ reasonably found that this evidence detracted from the reliability of Dye's allegations. Admin. R. 19.

Finally, the ALJ considered Dye's reported daily activities. An ALJ may reasonably question the credibility of a claimant whose daily activities appear inconsistent with the symptoms she claims. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). "[The ability] to take care of... personal needs, prepare easy meals, do light housework, and shop for some groceries... may be seen as inconsistent with the presence of a condition which would preclude all work activity." *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990). Moreover, where the evidence shows a claimant's activities conflict with her alleged symptoms, it supports an adverse credibility determination, regardless of whether the activities demonstrate that the claimant can work. *Molina*, 674 F.3d at 1113.

Here, the ALJ found Dye's activity level contradicted her claims about the severity of her limitations. Dye reported that she cared for three dogs, cooked, cleaned, washed dishes, did laundry, and watered plants. She was able to drive herself where she needed to go. She helped her mother with grocery shopping and could handle her own funds. She visited friends regularly. Admin. R. 283-84, 290-30. In April 2010, Dye reported that she had a new boyfriend. Admin. R. 410. In 2011, Dye told Dr. Preston that she cleaned her home, cooked meals, babysat for a friend, traveled to Eugene, enjoyed going to Head Start to help her mother with the kids there, and generally tried to get out more. Admin. R. 463-65, 467. She later reported going out to see movies. Admin. R. 545.

The ALJ rationally found these activities inconsistent with Dye's alleged limitations, demonstrating that Dye is more active than she claimed, able to leave her house when motivated to do so, and to engage in limited social interactions within the scope of her RFC assessment. Admin. R. 21. Accordingly, Dye's reported activities supported an adverse inference as to the credibility of her subjective statements.

The ALJ's findings are sufficiently specific for me to conclude that he did not arbitrarily discount Dye's credibility. His findings are supported by substantial evidence and his reasoning is clear and convincing. Accordingly, even if the evidence could be interpreted differently in a manner more favorable to Dye, the credibility determination cannot be disturbed. *Tommasetti*, 533 F.3d at 1039; *Fair*, 885 F.2d at 604.

**B. Medical Opinions**

Dye contends that the ALJ's RFC determination failed to account for limitations identified in the opinion of Dr. Farley. Dr. Farley is a psychiatrist who provided Dye with treatment beginning in 2010. Admin. R. 607-10. In a checklist dated February 1, 2013, Dr. Farley identified marked limitations in Dye's ability to understand, remember, and carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance and punctuality; to work in coordination with or proximity to others without being distracted by them; and to complete a normal workday and workweek performing at a consistent pace without unreasonable rest periods. Admin. R. 540-43.

The ALJ did not give Dr. Farley's opinion significant weight. Admin. R. 38. An ALJ can properly reject a treating physician's opinion in favor of an examining physician's conflicting opinion if the ALJ sets forth specific, legitimate reasons for doing so that are supported by the

record. *Molina*, 674 F.3d at 1111; *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

Here, the ALJ found Dr. Farley's opinion inconsistent with the opinion of Dr. Johnston, who performed a psychodiagnostic examination in March 2013. Dr. Johnston reviewed Dye's relevant treatment records, performed a clinical interview, and administered appropriate testing. Admin. R. 19, 21, 631. Dr. Johnston found Dye initially downcast, but she became energetic when describing her leisure activities. She was cooperative and euthymic. Her orientation, concentration, attention, insight, judgment, and planning were adequate. Dr. Johnston said Dye's performance on the examination indicated she could understand and remember instructions, had adequate attention, concentration, and persistence, and could engage appropriately in social interactions. In all, Dr. Johnston found that Dye had no psychological problems that rose to a level that would prevent her from working a normal work day or work week in competitive employment. Admin. R. 630-31. The ALJ found Dr. Johnston's opinion more consistent with the record as a whole than the opinion of Dr. Farley. Admin. R. 21.

The ALJ found Dr. Farley's opinion that Dye had marked limitations unsupported by his own findings or by the medical record as a whole. Admin. R. 22. An ALJ may properly reject a physician's opinion that is conclusory and unsupported by clinical findings. *Meanal v. Apfel*, 172 F.3d at 1117. An ALJ need not accept the medical opinion of a doctor whose treatment notes and clinical observations do not support the doctor's assessment of the claimant's abilities. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Dr. Farley opined that Dye had panic attacks that would be distracting to others, and could not leave home without a "safe person." Admin. R. 543. However, Dye's reports to Dr. Farley, Dr. Preston, and Dr. Johnston revealed decreased symptoms with medication and an ability to travel

10 - OPINION AND ORDER

independently. Admin. R. 19, 21-22, 467, 484, 554, 565, 569, 573, 575, 577, 580, 583, 629-30. The ALJ reasonably found the marked limitations Dr. Farley suggested were not consistent with Dye's documented activities, including basic household tasks, social functioning, and long drives to the Oregon Coast. Admin. R. 22. The absence of clinical observations supporting Dr. Farley's opinion supports an inference that Dr. Farley relied heavily on Dye's subjective statements in assessing her limitations. A physician's opinion that is premised on the claimant's subjective statements is no more credible than the statements upon which it relies. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Fair v. Bowen*, 885 F.2d at 605. Under these circumstances, there was no error in the ALJ's determination that Dr. Farley's opinion was entitled to discounted weight.

Dye also contends that the ALJ erred in his evaluation of Dr. Preston's opinion. Dr. Preston provided Dye with outpatient psychotherapy several times each year beginning in 2011. Dr. Preston assessed Dye's global functioning in a range indicating serious symptoms or limitations. Admin. R. 467. The ALJ properly discounted Dr. Preston's global assessment of functioning because Dr. Preston did not offer any narrative explanation or clinical findings to support it. An ALJ need not give weight to such conclusory opinions. *Bayliss v. Barnhart*, 427 F.3d at 1216; *Meanal v. Apfel*, 172 F.3d at 1117. Again, the absence of clinical findings supports an inference that Dr. Preston relied primarily on Dye's subjective complaints to form her opinion. An ALJ may discount a treating physician's opinion that is premised primarily on subjective complaints that the ALJ properly finds unreliable. *Tonapetyan*, 242 F.3d at 1149; *Fair*, 885 F.2d at 605. Here, the ALJ found the global assessment of functioning scores of Drs. Farley and Johnson, who both rated Dye's functioning in the moderate range, more consistent with the record as a whole. Admin. R. 610, 631.

The ALJ provided specific, legitimate reasons for the weight he attributed to the opinions of Drs. Farley and Preston, and his reasons are supported by reasonable inferences drawn from substantial evidence in the record. Accordingly, the ALJ's evaluation of these opinions cannot be disturbed. *Batson*, 359 F.3d at 1193; *Andrews*, 53 F.3d at 1039-40.

### C. Lay Witness Statements

Dye contends the ALJ failed to give sufficient weight to the statements of her mother, Connie Thompson. Mrs. Thompson said that Dye stayed at home and spent most of her time in bed or trying to get out of bed. She said Dye was sometimes incapable of leaving the house and other times could go on short shopping trips with her. She suggested that Dye required reminders to take her medications and could not handle bills if she tried. Mrs. Thompson also said that Dye had problems with memory, concentration, and persistence in completing tasks. Admin. R. 288-93. The ALJ considered Mrs. Thompson's testimony and gave it some weight, but discounted her statements that suggested limitations in excess of those in the RFC assessment. Admin. R. 23.

An ALJ must consider lay witness testimony concerning a claimant's ability to work. *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay testimony as to the claimant's symptoms or how an impairment affects the ability to work cannot be disregarded without comment. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). If the ALJ wishes to discount the testimony of a lay witness, he must give reasons that are germane to the witness. *Lewis*, 236 F.3d at 511.

The ALJ provided adequate reasons here. First, the ALJ found that Mrs. Thompson's report was based primarily on Dye's "subjective presentation and reports, which are not fully credible." Second, the limitations Mrs. Thompson provided were not supported by the clinical findings from

12 - OPINION AND ORDER

her mental health treatment providers and examiners. Third, Dye's documented activities support greater functioning than Mrs. Thompson's statements suggest. Admin. R. 23.

The ALJ's interpretation of Mrs. Thompson's statements in context with the record as a whole is rational and he explained the weight given to the statements with reasons germane to the witness. Accordingly, the ALJ's evaluation of this evidence was not erroneous. *See Lewis*, 236 F.3d at 511-12 (ALJ may reject lay witness statement for reasons germane to the witness); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (court must uphold AJL's rational factual findings even if the evidence also supports another rational interpretation).

In summary, the ALJ properly evaluated the credibility of Dye and Mrs. Thompson and adequately explained the weight he gave to the medical opinions in formulating his RFC assessment. The RFC calculation properly "took into account those limitations for which there was record support that did not depend on [the claimant's] subjective complaints." *Bayliss v. Barnhart*, 427 F.3d at 1217. Accordingly, I find no error in the ALJ's decision to deny Dye's applications.

## CONCLUSION

For the foregoing reasons, Dye's claims of error cannot be sustained and the Commissioner's final decision is AFFIRMED.

DATED this 23rd day of September, 2015.

Robert E. Jones, Senior Judge
United States District Court